UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARIUS JAMAL BRIDGES,

                       Plaintiff,

v.                                                                  CASE # 19-cv-00029

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| WILLIAM C. BERNHARDI LAW OFFICES<br> Counsel for Plaintiff<br>950-A Union Road<br>Suite 240<br>West Seneca, NY 14224 | KENNETH R. HILLER, ESQ.<br>MARY ELLEN GILL, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br> Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | PETER WILLIAM JEWETT, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **GRANTED**, defendant's motion is **DENIED,** the decision of the Commissioner is

**REVERSED**, and this matter is **REMANDED** for further administrative proceedings consistent with this order.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on May 8, 1971 and has a high school education. (Tr. 160, 189). Generally, plaintiff's alleged disability consists of arthritis in the spine and neck problems. (Tr. 188). His alleged onset date of disability is February 28, 2015. (Tr. 184). His date last insured is September 30, 2018. (Tr. 184).

### B.     Procedural History

On June 17, 2015, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 160-165). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On September 22, 2017, plaintiff appeared before the ALJ, Mary Mattimore. (Tr. 31-80). On November 21, 2017, ALJ Mattimore issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 13-26). On November 16, 2018, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Thereafter, plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since February 28, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3. The claimant has the following severe impairments: degenerative disc disease with spinal stenosis and history of spondylotic myelopathy of the cervical spine; degenerative disc disease of the lumbar spine; and bilateral carpal tunnel syndrome (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he: can frequently climb stairs, rams, ladders, ropes, scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; requires the freedom to occasionally use a cane for ambulating; can occasionally push/pull bilaterally; can frequently finger, handle, and reel bilaterally; can frequently operate foot controls bilaterally; and can have no exposure to hazardous machinery and unprotected heights .

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 8, 1971 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-26).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ's RFC finding is not supported by any competent medical opinion evidence, but rather on the ALJ's own lay interpretation of the raw medical data. (Dkt. No. 8 at 14). Second, plaintiff argues that throughout her decision, the ALJ selectively read and mischaracterized the record. (Dkt. No. 8 at 19). Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 10).

### B.   Defendant's Arguments

In response, defendant broadly argues substantial evidence supports the commissioner's decision that plaintiff was not disabled. (Dkt. No. 9 at 14). More specifically, defendant argues the ALJ's RFC findings were well supported and the ALJ properly evaluated the opinion evidence. (Dkt. No. 9 at 15).

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

The RFC is an assessment of "the most [plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ is responsible for assessing plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). In this case, there was one medical source opinion from a consultative examination, which was obtained within a week after plaintiff's cervical fusion surgery. (Tr. 310-314). No treating source provided a medical source statement and no additional consultative exam was ordered in the two-year lapse before the hearing. Plaintiff asserts the ALJ failed to properly assess plaintiff's physical RFC because the ALJ erred in the interpretation of the consultative examiner's findings and in the weighing of the opinion in general. (Dkt. No. 8 at 14). Plaintiff argues the error was compounded by the ALJ's lay interpretation of bare medical findings and opinion in assessing his RFC. (Dkt. No. 8 at 16). Defendant counters the ALJ is permitted to adopt only parts of an opinion and that an ALJ is permitted to determine an RFC without relying on a medical opinion. (Dkt. No. 9 at 14-16).

Contrary to plaintiff's assertion, an ALJ's RFC determination is not flawed merely because it was formulated without medical opinions to support each finding. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's]

6

residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted). However, remand may be appropriate where an ALJ fails to assess plaintiff's "capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). In other words, "the ALJ must simply explain the link between his RFC assessment and the record evidence supporting that assessment." *Paul v. Colvin*, No. 15-CV-310, 2016 WL 6275231, at *2 (W.D.N.Y. Oct. 27, 2016). Here, the ALJ failed to provide such link.

On August 3, 2015, Dr. Donna Miller performed a consulting internal medicine examination at the request of the state agency. (Tr. 310). Plaintiff had undergone cervical fusion surgery on July 30, 2015. (*Id*.). Five days prior to the consultative examination. Dr. Miller opined that plaintiff had "severe limitation with heavy lifting, bending, carrying, pushing, and pulling, but he is less than one-week status post cervical fusion with a fair prognosis." (Tr. 313). In her decision, the ALJ "accorded great weight to Dr. Miller's opinion in finding that the claimant can perform a reduced range of light work with significant limitations in pushing and pulling," but gave little weight to the remainder of the opinion. (Tr. 23).

Although an RFC finding need not track any one medical opinion, the ALJ is not free to selectively pick and choose only evidence supporting her already-determined RFC, and the ALJ is not permitted to reinterpret the doctor's own medical findings in favor of her own lay reading of the medical data. *See Royal v. Astrue,* 2012 WL 5449610, *6 (N.D.N.Y. Oct. 2, 2012) (noting that while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion).

The ALJ erred with her lay interpretation of Dr. Miller's medical findings. The ALJ rejected Dr. Miller's severe limitations for lifting, bending, and carrying without relying on any medical opinion to the contrary. Conversely, the ALJ cited her own interpretation of the medical data that "severe limitations on bending (presumably at the waist – that is, 'stooping') would appear to be unduly influenced by the claimant's inability to participate in some testing." (Tr. 23). This statement was speculative and not supported by Dr. Miller's examination. The ALJ had concluded that because plaintiff did not participate in tests for bending on that day, the severe limitation for bending was not accurate. Therefore, the ALJ erroneously substituted her own conclusion for the opinion of the physician. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (stating that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion").

The ALJ states the severe limitations in heavy lifting, carrying, pushing, and pulling were consistent with Dr. Miller's exam findings and evidence of record, but subsequent clinical testing did not support a finding of severe limitations in stooping or other procedural movements. (Tr. 23). However, the ALJ never obtained an updated medical opinion once plaintiff recovered from the surgery and substantial evidence does not support the ALJ's conclusion, particularly imaging in September 2016 and plaintiff's reports in July 2017. *See Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, *5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding."). A September 19, 2016 MRI showed post-operative changes with good decompression of his spinal cord, but with mild stenosis at C3-4 and C6-7 as well as bulging at C7-T1, and "no evidence of cord compression . . . although there is evidence of cord signal changes between C4 and C6 that are similar to his preoperative MRI." (Tr. 393). On July 17, 2017, plaintiff reported to his surgeon that he had no change in his physical condition with mild neck pain occasionally, continued numbness in both

hands and feet, and use of a cane. (Tr. 393). Findings at the July 2017 appointment were noted by the ALJ to be similar to an April 2016 visit but the ALJ again speculated that 2017 examination findings may not have been accurate. ALJ Mattimore states "it would seem if the same clinical signs occurred at the same level of severity" the doctor would not describe such a positive outcome. The ALJ also dismissed the imaging as just mild findings without referencing the complete report, just the doctor's brief summary. (Tr. 21-22).

The records post-surgery were complex and involved numerous detailed imaging findings, such as the 2016 MRI previously mentioned. Although dismissed by the ALJ as just "mild" findings, the imaging after surgery revealed numerous findings:

> Straightening of the normal lumbar lordosis which might be secondary to muscular spasm; mild multilevel spondylotic changes with mild endplate spurring at almost all intervertebral disc levels of the visualized lumbar spine; and mild disc space narrowing and facet joint arthropathy at L5-S1 level and to a lesser extent at L4-5 (Tr. 366-367); cervical spinal findings showing at C3-C4, mild spondylosis and a mild disc bulge, with moderate right and more severe left foraminal stenosis; at C4-C5, dorsal osteophyte larger on the right that encroaches on the lateral recesses, particularly on the right, with severe bilateral foraminal stenosis; at C5-C6, moderate right and more severe left foraminal stenosis; at C6-C7, spondylosis and moderate foraminal stenosis (Tr. 370); and satisfactory postoperative changes of the anterior cervical discectomy and fusion from C4 to C6 with persistent hypertrophy of the uncovertebral joints with foraminal encroachment and stenosis; persistent posterior ridging and herniation at the C3-C5 disc level with hypertrophy of the uncovertebral joints and bilateral foraminal stenosis; at C6-7, stable mild spondylosis with posterior riding and bulge partially effacing the anterior subarachnoid space with hypertrophy of the uncovertebral joints and foraminal stenoses, worse on the right; and at C7-T1, worsening posterior bulge and developing mild broad-based subligamentous protrusion partially effacing the anterior subarachnoid space. (Tr. 373-373).

At first glance, these findings appear to be significant with a plethora of medical terms beyond a lay person's comprehension. Although weight was given to Dr. Miller's opinion with regards to pushing and pulling, it is unclear how the ALJ arrived at the highly specific RFC finding that included limitations on climbing stairs, ramps, ladders, ropes, scaffolds, operating foot controls in light of the objective evidence. "Pursuant to SSR 96-8p, the RFC assessment must include a

narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Duross v. Comm'r of Soc. Sec.,* 2008 WL 4239791, *9 (N.D.N.Y. Sept. 11, 2008) ("While the ALJ reviewed the medical evidence in some detail and discussed Plaintiff's credibility, the ALJ failed to explain on which specific evidence he relied in making the RFC determination.).

The substantial evidence for the ALJ's limitation on fingering, handling and feeling bilaterally is also unclear because it is contrary to the evidence cited in the decision. In referring to plaintiff's carpal tunnel syndrome, the ALJ noted that there is only "briefly" a sensory disturbance of the right upper extremity in the record but does not cite a specific record. (Tr. 23). In her decision, the ALJ notes that Dr. Miller found normal fine motor movement and full motor strength in all four extremities, but then the ALJ immediately states "this further supports a finding that the claimant can perform frequent handling, fingering and feeling." (Tr. 23). Again, the ALJ failed to explain the link between her RFC assessment and the record evidence supporting that assessment. An ALJ must "conduct a distinct analysis that would permit adequate review on appeal," *Aung Winn v. Colvin*, 541 Fed. Appx. 67, 70 (2d Cir. 2013). When an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported his RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc, Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: April 24, 2020                          *J. Gregory Wehrman*
Rochester, New York                 HON. J. Gregory Wehrman
                                                         United States Magistrate Judge